IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:21-cv-

STATE FARM FIRE & CASUALTY COMPANY,

Plaintiff,

v.

CODY KLATKA, CODY KLATKA, LLC, MICHAEL BULLOCK, AND JEANETTE BULLOCK,

Defendants.

---

**COMPLAINT FOR DECLARATORY RELIEF**

---

PLAINTIFF, State Farm Fire & Casualty Company, by and through its attorneys, Patterson Ripplinger, P.C., submits the following Complaint for Declaratory Relief.

**STATEMENT OF JURISDICTION**

1. Federal diversity jurisdiction exists under 28 U.S.C. §1332(a) because of a complete diversity of citizenship between Plaintiff and Defendants and because the amount in controversy exceeds $75,000, exclusive of interest and costs. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. §1332(a) (diversity of citizenship) and 28 U.S.C. §2201(a) (declaratory relief) and venue is proper.

2. For diversity purposes, “a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.” 28 U.S.C. §1332(c)(l). State Farm is and was at the commencement of this action an Illinois corporation with its principal place of business in Illinois.

3. Defendant Cody Klatka is a resident and citizen of Colorado.

4. Cody Klatka, LLC (collectively with Cody Klatka, the "Klatka Defendants") is a Colorado limited liability company with its principal place of business in Colorado.

5. Defendants Michael and Jeanette Bullock ("Bullocks") are citizens and residents of Colorado and the owners of a single-family residence located at 7081 South Windsor Street, Littleton, Colorado ("Residence").

6. The Bullocks procured a $831,206.07 arbitration award against the Klatka Defendants that the Bullocks, via a *Nunn* agreement, seek to recover from State Farm.

## GENERAL ALLEGATIONS

7. The Bullocks sought to renovate the Residence and, on or about May 26, 2017, retained The Firm, An Insurance Claim Specialist ("The Firm") to complete said renovations.

8. The Firm, in turn, retained or used a number of subcontractors including the Klatka Defendants to assist with said renovations. Mr. Klatka is the sole owner of Cody Klatka, LLC.

9. The renovations commenced in approximately July 2017. The Bullocks, along with their three children, remained in the Residence. Upon information and belief, no one contacted the Arapahoe County Building Department to procure permits. Upon information and belief, the permitting process would require an inspection for asbestos before construction commenced.

10. The renovations ended in December 2017.

11. At some point in 2018, the Bullocks realized that permits were not pulled. The Arapahoe County Building Department was contacted and advised that an asbestos inspection was necessary.

12. The inspection occurred on November 16, 2018 and revealed that large portions of the Residence had been exposed to asbestos.

13. During the renovations, Cody Klatka, LLC was insured by State Farm under a Business-Miscellaneous Policy, identified as policy number 96-CG-J268-6 ("Policy"). The Policy provided Business Liability limits of $1,000,000 and General Aggregate limits of $2,000,000.

14. On April 22, 2019, the Bullocks filed suit in Arapahoe County District Court, Case No. 2019CV030949, against the Firm, the Klatka Defendants, and three other defendants associated with the renovations: Randal Manning, Sr., Mark Beery, and Canyon Ranch Ventures, LLC. In the suit, the Bullocks alleged that the Klatka Defendants were negligent, negligent *per se*, acted willfully and wantonly/were grossly negligent, made false representations, had not disclosed or concealed material facts, had participated in a civil conspiracy, engaged in outrageous conduct, and had violated the Colorado Consumer Protection Act, C.R.S. §6-1-105. The Bullocks also alleged that Mr. Klatka had made negligent misrepresentations.

15. On January 28, 2019 and again on June 21, 2019, State Farm advised that there was no coverage for defense or indemnity for the Klatka Defendants under the Policy because a number of exclusions applied, including but not limited to an exclusion for discharge, dispersal, seepage, migration, release or escape of pollutants and an exclusion for failing to render professional services including inspection activities. These exclusions apply "even if the claims allege negligence or wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the occurrence which caused the bodily injury or property damage … involved the rendering or failure to render any professional service."

16. In or about April 2020 (the day of the agreement is blank), the Bullocks and the Klatka Defendants entered into an agreement commonly referred to as a *Nunn* Agreement.

17. The Klatka Defendants entered into the *Nunn* Agreement without permission from State Farm and in breach of their obligations under the liability policy.

18. Among other terms, the *Nunn* Agreement:

a. waives a jury trial, the very heart of the American judicial system, which is the best in the world and which jury system differentiates it from lesser judicial systems throughout the world;

b. agrees to attend an arbitration before a single arbiter solely on the issue of damages;

c. waives any right to appeal the arbiter's award, even if the arbitrator commits errors in law or fact;

d. assumes sole responsibility for failing to pull the permits for the project despite the presence of four other contractor defendants and other subcontractors and the fact that Plaintiff sought exemplary damages from The Firm *only* for failing to procure permits and have asbestos testing done;

e. provides that the Klatka Parties "failed to pull the permits and made other significant mistakes on the project because of its size" and, therefore, are solely responsible for the Bullocks' damages at arbitration, even though Mr. Klatka completed a sworn affidavit that his understanding was that it was not his responsibility to procure permits and that it was the responsibility of Randall Manning, Sr., his subcontractors, or Canyon Ranch Ventures;

f. passes the Klatka Defendants' financial responsibility that exceeds $1,000 onto State Farm;

g. assigns all rights, title, and interest the Klatka Defendants have in any claims against State Farm to the Bullocks;

h. requires the Klatka Defendants to cooperate with the Bullocks and their attorneys, even during periods when they would normally be adverse such as the arbitration; and

i. requires the filing of a lawsuit against State Farm and the Klatka Defendants' cooperation with the Bullocks in said lawsuit.

19. The State Farm Coverage L - Business Liability insuring agreement within the Business-Miscellaneous Policy - Businessowners Coverage Form, CMP-4100, contains a number of relevant provisions including, but not limited to, the following:

> **Coverage L - Business Liability**
>
> **1. When a Limit Of Insurance is shown in the Declarations for Coverage L -Business Liability, we will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured by counsel of our choice against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit'' with or without the insured's consent, for any reason and at any time. But a. The amount we will pay for damages is limited as described in SECTION II - LIMITS OF INSURANCE; and b. Our right and duty to defend end when we have used up the applicable Limit Of Insurance in the payment of judgments or settlements or medical expenses. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Section II – Supplementary Payments.**
>
> **2. This insurance applies:**
> **a. To "bodily injury" and "property damage" only if:**
> **(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";**
> **(2) The "bodily injury" or "property damage" occurs during the policy period; and**

> **(3) Prior to the policy period, no insured listed under Paragraph 1.a. of SECTION II - WHO IS AN INSURED and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.**
> **b. To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.**

20. The State Farm Coverage L - Business Liability insuring agreement within the Business-Miscellaneous Policy - Businessowners Coverage Form, CMP-4100 provides a number of relevant definitions including, but not limited to, the following:

> **SECTION II – DEFINITIONS**
>
> **3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury caused by the "bodily injury".**
>
> **7. Pollution**
> **a. "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, spill, release or escape of "pollutants":**
>
> **(5) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".**
>
> **b. Any loss, cost or expense arising out of any:**
>
> **(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or**

**(2) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".**

**However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.**

**9. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:**

**a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or**
**b. You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.**

**10. "Insured contract" means:**

**a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";**
**b. A sidetrack agreement;**
**c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;**
**d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;**
**e. An elevator maintenance agreement;**
**f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.**

**Paragraph f. does not include that part of any contract or agreement:**

**(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;**
**(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:**
**(a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or**
**(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or**
**(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph (2) above and supervisory, inspection or engineering services.**

**17. "Occurrence" means an accident, including continuous or repeated exposure**
**to substantially the same general harmful conditions.**

**18. "Personal and advertising injury" means injury, including consequential "bodily**
**injury", arising out of one or more of the following offenses:**

a. **False arrest, detention or imprisonment;**
b. **Malicious prosecution;**
c. **The wrongful eviction from, wrongful entry into, or invasion of the right of privacy, of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;**
d. **Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;**
e. **Oral or written publication, in any manner, of material that violates a person's right of privacy;**
f. **The use of another's advertising idea in your "advertisement"; or**
g. **g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".**

**19. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.**

**21 . "Property damage" means:**
**a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or**
**b. Loss of use of tangible property that is not physically injured or destroyed, provided such loss of use is caused by physical injury to or destruction of other tangible property. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.**

**For the purposes of this insurance, electronic data is not tangible property.**

**As used in this definition, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.**

**27. "Your work":**

**a. Means:**
**(1) Work or operations performed by you or on your behalf; and**
**(2) Materials, parts or equipment furnished in connection with such work or operations.**
**b. Includes:**
**(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and**
**(2) The providing of or failure to provide warnings or instructions.**

21. The State Farm Coverage L - Business Liability insuring agreement within the Business-Miscellaneous Policy - Businessowners Coverage Form, CMP-4100, contains a number of relevant exclusions, including, but not limited to, the following:

**Section II- Exclusions**

**2. Contractual Liability**

**"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:**

**a. That the insured would have in the absence of the contract or agreement;**
**or**
**b. Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:**
**(1) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and**
**(2) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.**

**7. Pollution**

**a. "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, spill, release or escape of "pollutants":**

**(5) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".**

**b. Any loss, cost or expense arising out of any:**

**(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or**
**(2) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".**

**However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.**

**…**

**1. Expected Or Intended Injury**

**a. "Bodily injury" or "property damage" expected or intended to cause harm as would be expected by a reasonable person; or**
**b. "Bodily injury" or "property damage" which is the result of willful and malicious, or criminal acts of the insured.**
**This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.**

**11. Professional Services Or Treatment**

**"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render any professional service or treatment. This includes but is not limited to:**
**b. Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications;**
**c. Supervisory, inspection, architectural or engineering activities;**

**12. Damage To Property**

**"Property damage" to:**

**e. That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations;**
**f. That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it; or**

**15. Damage To Impaired Property Or Property Not Physically Injured**

**"Property damage" to "impaired property" or property that has not been physically injured, arising out of:**
**a. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work''; or**
**b. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.**
**This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.**

**16. Recall Of Products, Work Or Impaired Property**

**Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:**
**a. "Your product";**
**b. "Your work"; or**
**c. "Impaired property";**
**if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.**

22. The State Farm Coverage L - Business Liability insuring agreement within the Business-Miscellaneous Policy - Businessowners Coverage Form, CMP-4100, excludes the payment of attorney fees as follows:

**Section II - Supplementary Payments**

**1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:**

**e. Any cost taxed against the insured in the "suit", except for attorney fees and expenses.**

23. The Klatka Defendants breached their contractual duties under the Policy as described above, including by assuming liability under the *Nunn* Agreement. These breaches void coverage under the policy.

24. Further, the claims asserted, and damages sought by, the Bullocks, for which the Klatka Defendants assumed liability, are excluded under the terms of the policy, as set forth above.

25. The *Nunn* Agreement contains language that "Nothing in this Agreement shall be construed as a release, except for the Klatka Parties' release of claims set forth in Paragraph 2 above." However, the *Nunn* Agreement is in fact a release. It releases the Klatka Defendants from all personal and financial responsibility for their actions in exchange for paying $1,000 which will be paid back to the Klatka Defendants if they recover funds from State Farm, in addition to funds recovered from State Farm on any extracontractual claims.

26. This action involves a determination of rights under the policy of insurance under which the Klatka Defendants claim benefits and through which the Bullocks' rights may be affected. Plaintiff is entitled to have the Court clarify and declare its rights and obligations under the insurance policy, pursuant to 28 U.S.C. §2201(a) and Fed.R.Civ.P. 57.

## <u>FIRST CLAIM FOR RELIEF</u>
## Declaratory Relief – Claims Not Covered

27. State Farm incorporates all preceding paragraphs by reference.

28. The claims asserted by the Bullocks against the Klatka Defendants in the underlying lawsuit filed in Arapahoe County District Court, Case No. 2019CV030949, are not covered and are excluded from coverage under the terms of the State Farm Insurance policy.

29. Neither the Bullocks nor the Klatka Defendants are entitled to recover any money or benefits under the State Farm Policy, because the claims in the underlying litigation do not qualify for coverage or are excluded from coverage.

30. Plaintiff is entitled to have the Court clarify and declare its rights and obligations under the insurance policy, pursuant to 28 U.S.C. §2201(a) and Fed.R.Civ.P. 57.

31. A justiciable controversy has arisen as a result of the *Nunn* Agreement and the Klatka Defendants' breach of the terms of the insurance contract.

32. The Court's ruling on these issues will fully and finally resolve the uncertainty and controversy as to all the interested parties.

33. Plaintiff desires a judicial determination of the rights and obligations of each of the parties to this action with respect to the State Farm policy.

34. A judicial determination is necessary and appropriate at this time in order that the parties may ascertain their respective rights and duties as to one another and may conduct themselves accordingly now and in the future.

**SECOND CLAIM FOR RELIEF**
**Declaratory Relief – Breach of Contract**

35. State Farm incorporates all preceding paragraphs by reference.

36. The Klatka Defendants have failed to comply with their duties under the Policy, have breached their duties under the Policy and have violated State Farm's rights under the contract, including as set forth above.

37. Plaintiff is entitled to have the Court clarify and declare its rights and obligations under the insurance policy, pursuant to 28 U.S.C. §2201(a) and Fed.R.Civ.P. 57.

38. A justiciable controversy has arisen as a result of the *Nunn* Agreement and the Klatka Defendants' breach of the terms of the insurance contract.

39. The Court's ruling on these issues will fully and finally resolve the uncertainty and controversy as to all the interested parties.

40. Plaintiff desires a judicial determination of the rights and obligations of each of the parties to this action with respect to the State Farm policy.

41. A judicial determination is necessary and appropriate at this time in order that the parties may ascertain their respective rights and duties as to one another and may conduct themselves accordingly now and in the future.

WHEREFORE, Plaintiff State Farm Fire & Casualty Company prays for judgment as follows:

A. For a declaratory judgment decreeing the rights and obligations of the parties under the State Farm policy.

B. For a determination that Plaintiff owes no liability coverage to the Klatka Defendants or the Bullocks as a result of the Klatka Defendants' breach of the insurance contract.

C. For a determination that the Klatka Defendants have breached their obligations under the insurance contract and that the breaches are material.

D. For costs of suit incurred herein.

E. For such other relief as the Court deems just and proper.

DATED this 5th day of February, 2021.

Respectfully submitted,

**PATTERSON RIPPLINGER, P.C.**

*s/ FRANKLIN D. PATTERSON*

Franklin D. Patterson
Gordon A. Queenan
*Attorneys for Plaintiff*
5613 DTC Parkway, Suite 400
Greenwood Village, Colorado 80111
Telephone: (303) 741-4539
Email: fpatterson@prpclegal.com
gqueenan@prpclegal.com

Address of Plaintiff:
P.O. Box 106169
Atlanta, Georgia 30348-6169